# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0369
Filed May 13, 2026

———————————

**In the Interest of R.B. and S.B., Minor Children,**

**K.S., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Dubuque County,
The Honorable Thomas J. Straka, Judge.

———————————

**AFFIRMED**

———————————

Gina L. Kramer of Kramer Law Office, PLLC, Dubuque,
attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran,
Assistant Attorney General, attorneys for appellee State.

Taryn McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,
Dubuque, attorney for minor children.
Kristy Hefel of Dubuque Public Defender's Office,
guardian ad litem for minor children.

———————————

Considered without oral argument by Tabor, C.J.,
and Chicchelly and Sandy, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

A mother, Kathrine, challenges the juvenile court's order suspending her visits with nine-year-old R.B. and twelve-year-old S.B. under Iowa Code section 232.102A(2) (2025). Besides contesting the suspension of family interactions, Kathrine contends that the court erred in denying her motion for reasonable efforts.

After our independent assessment of the record, we reach the same conclusion as the juvenile court on suspending family interactions.[1] As the children's therapist determined, continued visitation with Kathrine posed a serious risk of emotional harm to her sons. As to her second claim, we don't reach the merits. While the Iowa Department of Health and Human Services did little to nothing to facilitate therapeutic visitation, the mother's reasonable efforts challenge is not properly before us. Thus, we affirm the permanency order.

## I. Facts and Prior Proceedings

In January 2025, the juvenile court adjudicated R.B. and S.B. as children in need of assistance (CINA) because of "ongoing concerns" over their mother's alcohol abuse. As the court noted, the boys told social workers that their mother drank "Hawkeye [vodka] everyday all day." As the court found, Kathrine would drink to intoxication and become physically and emotionally abusive to her sons or "simply pass[] out as their sole caretaker."

---

[1] We review permanency orders de novo. *In re E.R.*, 973 N.W.2d 889, 893 (Iowa Ct. App. 2021). We give weight to the juvenile court's fact findings but are not bound by them. *Id.* We must "examine the entire record and adjudicate anew rights on the issues properly presented." *Id.* (citation omitted).

Two months earlier, she was arrested for operating while intoxicated, registering a blood alcohol content over three times the legal limit at .282. Alarmingly, she was on her way to pick up the boys from school.

The department placed the boys with their paternal grandmother, where they have remained. They often declined visits with their mother because they were uncomfortable interacting with her.[2] The boys started therapy in June 2025. They were both diagnosed with adjustment disorders. As their therapist testified: "[T]here's just a lot of emotional dysregulation, trying to process through certain either traumas throughout their life." On top of adjustment challenges the boys faced, their mother sent them many inappropriate text messages containing harmful statements.

In July, the State moved to suspend visitation, noting that the children's therapist believed that continued parental visitation posed a serious risk to the emotional well-being and future mental health of both R.B. and S.B. After a hearing, the court ordered visitation be suspended in accordance with the therapist's recommendation.

Kathrine moved to enlarge that order, asking the court "to clarify if the motion was granted under Iowa Code [section] 232.102A(2) based on a finding that substantial evidence exists that the family interactions, whether supervised or unsupervised, would pose a serious risk of physical or emotional harm to the child." She also asked to bifurcate "the roles of guardian ad litem [GAL] and attorney for the children, as both children expressed a desire for visits, while their guardian ad litem verbally advised that she agreed with ending visits." The court granted the motion to enlarge,

---

[2] The boys' father was incarcerated during the CINA case but did maintain telephone contact with his sons. He is not a party to this appeal.

confirming that it suspended visitation under section 232.102A(2) and appointing a separate attorney for the children.

In early January 2026, the mother moved for reasonable efforts, challenging the suspension of family interactions on September 2. The motion continued:

> 2. Since then, Kathrine has had no visits with her children. Kathrine has repeatedly reached out to the Department to ask about how she can resume contact. Kathrine has signed all requested releases for her mental health provider.
>
> 3. The Department has indicated that any contact would first have to be in a therapy session. The Department has further stated that the boys' current therapy provider would not facilitate such a session.
>
> 4. [Kathrine] has diligently contacted every therapy provider in the area that she is aware of and has been unable to find someone willing and able to facilitate such visits. [She] has asked the Department for help in locating a provider but has not received such help.
>
> 5. [R.B.] and [S.B.] continue to initiate contact with Kathrine via their cell phones, indicating that they desire such contact.

At a permanency hearing on January 23, Kathrine testified that the department suggested a provider or two but offered no further help in finding someone to facilitate therapy with the boys. At the close of the hearing, the State's attorney responded to the reasonable efforts challenge:

> [I'm] frankly not entirely sure what service is being requested of the department. [Kathrine] has shown an ability to contact possible family therapy providers; she has done so. The fact that that family therapy is not available is not under the department's purview, so I'm not entirely sure what the department could do to assist [her] in finding them therapy. [The case manager] testified he is not aware of any other providers other than the people that she's provided and claims she made contact with.

On February 12, the court issued its permanency order, transferring guardianship of R.B. and S.B. to their paternal grandmother under Iowa Code section 232.104(2)(d)(1). Beyond the mother's troubling alcohol abuse detailed in the CINA adjudication order, here the court also expressed concern for Kathrine's mental health "as evidenced by the highly inappropriate texts she was sending to the boys."

The court didn't rule on Kathrine's reasonable-efforts motion. On February 25, Kathrine filed a notice of appeal. Then on March 5, she moved to enlarge the permanency order "to clarify whether her motion for reasonable efforts was denied." On March 10, the juvenile court granted that motion and enlarged its prior order to deny Katherine's motion for reasonable efforts. That same day, she filed her petition on appeal.

## II. Analysis

Kathrine raises two issues in that petition. First, she contends that the juvenile court erred in finding that visits should be suspended under Iowa Code section 232.102A(2). Second, she argues that the court erred in denying her motion for reasonable efforts.

Without reaching the merits, we address her second claim first. The juvenile court did not rule on Kathrine's reasonable-efforts motion in its permanency order. And Kathrine filed a notice of appeal before moving to enlarge. Because that appeal divested the juvenile court of jurisdiction, the later ruling is of no consequence. *See State v. Mallett*, 677 N.W.2d 775, 776 (Iowa 2004). Thus, we cannot review the department's inaction in arranging for therapeutic visitation.

As for family interactions, we recognize that the legislature prioritized the importance of visitation by enacting Iowa Code section 232.102A(2). *See*

*In re J.B.*, No. 26-0064, 2026 WL 895846, at *2 (Iowa Ct. App. Apr. 1, 2026) (recognizing visitation as a key ingredient to the goal of reunification). But that same statute also safeguards a child's physical and emotional well-being, providing in full:

> Family interactions shall continue regardless of a parent's failure to comply with the requirements of a court order or the department unless a court finds that substantial evidence exists that the family interactions, whether supervised or unsupervised, would pose a serious risk of physical or emotional harm to the child.

Iowa Code § 232.102A(2). Here, the juvenile court found substantial evidence warranting suspension of Kathrine's family interactions with R.B. and S.B.

In her petition on appeal, Kathrine contends that the therapist offered "contradictory" testimony on the risk of serious emotional harm to the boys from continued interactions with their mother. Kathrine acknowledges that the therapist testified that ongoing contact posed "an increased risk for things like anxiety, depression, low self-esteem, [and] cognitive distortions" to the children. But she points to the therapist's testimony on cross-examination that there was more "long-term" than "imminent risk" to the boys' mental health from continuing interactions with their mother. Kathrine also highlights testimony from the therapist that it could be "an appropriate strategy" to give the boys a choice to turn down visits rather than suspending them altogether.

We are unpersuaded by the mother's critique of the therapist's testimony. First, section 232.102A(2) does not include the word "imminent." Thus, the serious risk of long-term emotional harm justifies the juvenile court's suspension of family interactions. Moreover, key to the therapist's opinion was the slew of wildly inappropriate text messages that

6

Kathrine sent her sons.[3] Under examination by the State, the therapist agreed that from reviewing those messages, it was "almost immediately" apparent that "contact between mother and the children was causing them emotional trauma and dysregulation."

Second, foisting responsibility for declining visits with their mother onto these already-traumatized preteen boys was not a viable alternative. As the therapist clarified, while the boys were not forced to go to visitation if they didn't want to see their mother, there were circumstances when that strategy could go wrong. And as the record shows, the boys were coping well with the suspension of family interactions. Their GAL reported that they felt safer with their grandmother than with their mother.

Like the juvenile court, we find that the therapist's testimony supplied substantial evidence of a serious risk of emotional harm from continuing family interactions. Thus, we affirm the permanency order.

**AFFIRMED.**

---

[33] We choose not to extensively quote those messages, but it is relevant to note that the mother repeatedly made crass and callous accusations about the paternal grandmother, the boys' caretaker.